And for the appellant, Mr. Cleary, and for the athlete, Mr. Garland, you may proceed. Thank you, Your Honors. My name is Eric Hubbard. I'm here on behalf of the appellants. And what we're dealing with, what we bring before the court today, are two specific questions. The first of which is whether the trial court erred in granting summary judgment in favor of the plaintiffs, the athletes, and against the defendant's appellants. And the specific question there is whether the one-year limitations provision found in Section 7-1-46 of the Municipal Code bars the defendant's challenge of the automatic disconnection of parcels of land that are in question here. And in order to answer this question, there has to be an analysis of the interplay between several statutory provisions, two of which are in the Municipal Code, one of which is in the Public Library District Act. Specifically, the Municipal Code annexation provisions found in Section 7-1-1, which the requirements there are fairly onerous, but the requirements at issue here are, there's a 10-day, there's a notice requirement. The trustees of fire protection districts and public library districts are treated the same way, where there has to be notice provided to the trustees, each individual trustee of 10 days in advance of any action taken on an annexation. And in addition to that, an affidavit of service of notice must be recorded with the recorder of deeds in the county in which the annexation is taking place, if it's an annexation by ordinance. There are other requirements for court annexations, but for our purposes, we're dealing with the recording of affidavit of service of notice. If both of these, one or both of these, are not done, the statute is very clear the annexation of land is in effect. Now, although that's very clear, we then get to Section 7-1-46 of the Municipal Code, which is a statute of limitations specific to annexations. There, it's spelled out that an action cannot be commenced either directly or indirectly contesting an annexation of territory to a municipality unless it is initiated within one year after the date the annexation becomes final. And it goes on to say that this limitation applies even where annexation may otherwise be defective or void. Under the Public Library District Act, under the automatic disconnection provisions where there is an annexation of territory that lies within a public library district where the annexing body provides library services, then by operation of law that territory is disconnected from the public library district as of January 1st, the next year after the territory is annexed. It will not occur, the annexation will not, if within 60 days a petition contesting the annexation is filed. And if that is done, then the circuit court takes up the question and can provide five enumerated forms of relief. The first of which is to deny the disconnection, still allowing the annexation, it's a totally separate question, but denies the disconnection, allows the disconnection, allows disconnection over a specific period of time not to exceed five years, allows an agreement within five years to disconnect, or submits the question to the voters essentially of the territory annexed. You said the court would have the option to keep the annexation in effect, but deny the disconnect? It's my understanding of the statute again under the Public Library District Act that yes, the disconnection, and there's a criteria there which I didn't get into, the library district has to show a financial hardship if it's disconnected. If there's several parcels of land that provide tax revenue, that if that tax revenue is gone, that a hardship will inure to the public library district, then a court can order that as a form of relief, correct. That's my understanding of the statute. And keep it in mind, this is separate from the annexation provisions of the municipal code, so it has no effect on the validity of the annexation. So what we're dealing with here specifically then is we had ten annexation ordinances that were enacted between 1992 and 2003, and of those ten, four of them did not comply with There's a Supreme Court case, which is County of St. Clair v. City of Belleville, and that case provides that notice that has to be given under Section 7-1-1 of the municipal code must be effective notice. For the notice to be effective, it has to do two things. First, it has to tell of the specific action to be taken, and it has to give notice of the date of that action. In four of these ordinances, this was not done. The language of these ordinances, almost verbatim, was the same as the language in the ordinances at issue in that case. It did reference annexation in the notice, but it didn't say if it was court-ordered annexation or an ordinance to be passed, but more specifically and more significantly, it didn't give a date that this action was going to be taken. So it's our position that four of these ten annexation ordinances did not provide sufficient notice under that Supreme Court holding. The other six, by admission, I believe, of the plaintiff in this matter and the discovery we did conduct, they didn't record them with the Macon County Recorder of Deeds. So under the plain language of the statute, if there's no notice or if the affidavit of service of notice is not recorded, it's ineffective, the annexation is. So what we bring before you is the interplay with the Public Library District Act's automatic disconnection provisions. The predicate of an automatic... Counsel, I'm unclear. Why didn't the county clerk do the disconnect after the ordinances were passed? I honestly do not know the answer to that. That would have occurred, the oldest of those would have occurred in 1992. I don't know if they were contacted back then. I don't want to speculate or misstate what might be in the record, but my recollection is there's nothing in the record as to why they did not. I don't believe they were contacted back when these were passed. I don't think they were... Let me ask you this. Wouldn't it be the obligation of the county clerk, if an ordinance has passed and an annexation approved, to do the disconnect pursuant to the statute? I do not know the answer to that. I mean, I can't speak to that exactly. Well, doesn't the statute say that the disconnect happens as an operation of law? It does. Well, unless the county clerk has been notified, hey, there's a problem here, by the city, by the library district, by a landowner, wouldn't it be the responsibility, the duty of the county clerk to do the disconnect? Well, I believe it would be once they became aware of it, and my understanding of the facts of this case is that they became aware of it many years after the annexation ordinances were passed. When I say they, I mean the county clerk first became aware of it. I believe in 2009, when a letter was sent to the county clerk stating that, requesting the disconnection take place. I don't believe, to my recollection of the record, that the county clerk was ever notified prior to that time that these ordinances had, or notified that disconnection was being requested. So, where we came, the genesis of this case came about because they requested that the county clerk disconnect. Well, then, if the county clerk has a responsibility, which you seem to somewhat be agreeing with, to do the disconnect upon notice, why didn't the county clerk do it here upon notice? Because we, in looking at it, it did not appear that the disconnection would be proper here, because it did not look like the annexations were valid to begin with. But a county clerk doesn't have the responsibility to look at an annexation and decide whether it was proper, unless there's been some kind of objection. A county clerk just has the responsibility to do the disconnect, isn't that right? Well, I think that if the county clerk, relying on the, and I believe in this case it was the legal opinion of the state's attorney's office, if the county clerk believes that it's properly disconnected, that yes, that's a correct statement, they would have the obligation to disconnect. But I think the flip side of that is if the county clerk had a good faith belief upon conferring with the state's attorney that disconnection was not the proper course of action, that they could deny it. That I believe is essentially what happened. Without telling anybody? I mean, the clerk and the state's attorney get together and says, they decide, well, this doesn't look like it's really effective, so we'll just not do it? Here there was a dialogue back and forth between the Village of Foresight and the county clerk and the state's attorney's office leading up to this case. It wasn't anything where they just said no and didn't discuss the issue. I think that there was an exchange back and forth. When did the dialogue begin? I believe that was in 2009 that it was first requested that the disconnection take place. And I think I'm correct in that it was 2009. Because it was two years before suit was filed, which was in 2011 in November when the case was first filed. So what essentially we are faced with here is the disconnection by operation of law, our contention is, did not occur because the annexation under the plain terms of Section 7-1-1 was not effective. The focal point here really is the statute of limitations provision found in 7-1-46 of the Municipal Code. And the purpose, looking at the general purpose of the statute of limitations, encouraging diligence in filing actions and discouraging pursuit of stale claims. Also, it's axiomatic that a statute of limitations is not designed and should not be used to shield a wrongdoer. When you look at the specific purpose of Section 7-1-46, that was drawn out by the Illinois Supreme Court in Langendorf, the city of Urbana, which we have cited. And then that was expounded upon in the village of Glendale Heights, the Glenair Enterprises, which we have also cited. And that clearly states that the legislative intent of Section 7-1-46 was to shield the zoning provisions of annexation agreements from attack. So as applied here, the general purpose, as far as the diligence in filing an action, if notice is not properly given, if it's not properly recorded, it's very tough to be diligent to file an action that potentially you're unaware of in a relatively short time frame. Insofar as the specific purpose is, again, announced in the Langendorf case, there's nothing here. What we're doing is we're challenging the disconnection, the automatic disconnection. Nobody's trying to do an end-run around the zoning provisions of an annexation agreement. This is very... I don't understand that. You are arguing that the annexation was not effective. I know that's mentioned several times in the briefs. So you're asking, and you argued at the beginning of your oral here today, that there was a difference between the relief of don't do the disconnect but leave the annexation in place. You have argued that the annexation was ineffective. For the purpose of the disconnection, it's ineffective because it didn't trigger the disconnection provision. So it was ineffective as to... I mean, I think it was ineffective under the terms of the statute because it was not... Maybe I need a definition of disconnect. I assumed that simply meant that the county clerk changes the tax structure where the tax dollars go. Do they go to the library district or do they go to the foresight or whatever the case may be. Is that what disconnect means? It is. It's disconnecting the public, in this instance the Barclay Public Library District, and it's disconnecting the properties in question. The taxation of the Barclay Public Library District from the parcels in question. So turning to what the trial court did, procedurally there were cross motions for summary judgment that were filed and argued last December, both of which were denied initially. And the court in its ruling indicated that this is a case that was going to be tried on its merits. There was then a motion to reconsider filed by plaintiffs, which was taken up and ultimately decided on in March of this year. And the court did grant summary judgment in favor of the plaintiffs, relying on two cases, the Village of Glendale Heights, the Glen Eyre Enterprises, which I've already mentioned, as well as ROPAC, the City of Edwardsville. Those are the two cases that the court said that it was bound by the holdings of to determine that the statute of limitations barred our affirmative defense. The first case, the Village of Glendale Heights case, we believe is distinguishable. That dealt with an affirmative defense, which they looked at the language of the statute of limitations found in Section 7-1-46 of the Municipal Code. And they looked at the language which said that it enumerates a number of different entities that cannot commence an action, directly or indirectly, contesting an annexation of territory to a municipality. And the language commence an action, in that case, the defendants drew significance with, and the court indicated they thought that this was a, as they put it, a reasonable argument, that given the language of Section 5-2-201 of the Code of Civil Procedure, which states that every action, unless otherwise provided by statute, shall be commenced by the filing of a complaint. The defendants in Glendale Heights argued that, well, this is an affirmative defense, this is not the commencement of an action. The court grappled with that, and in grappling with it, the court said that, again, that was a reasonable interpretation, that commence an action means filing a complaint, and that's not an affirmative defense. But they dug deeper to the legislative purpose behind the statute of limitations provision that we're talking about. And they said that the legislative purpose of that provision was specifically to shield the zoning provisions of annexation agreements from attack after the passage of the one-year limitations provision. And the court repeatedly, in that case, limited its holding to the facts of that case. I think, in that case, the court, given everything, reached the right decision, but frankly, I think that their reasoning was strained to get there. I think the plain language, which in interpreting the statute, obviously, plain language should trump anything if able to be given its reasonable, ordinary interpretation. Here, commencement of an action, in light of the provisions of the municipal code, or, excuse me, of the provisions I just read of the Code of Civil Procedure, means filing a complaint. Counsel, can you give me an example of an indirect commencement of an action? I think an indirect commencement would be more like what the ROPAC case was discussing. And that was where they filed an action, but it was an indirect, and I think, if I'm correct, in what the court said there, that they believe that was more or less an indirect attack. Because there, there was an annexation that they were contesting based on a prior annexation, 20 years before, that they were arguing was invalid. So, I think that is an indirect attack, an example of an indirect commencement of an action. So, at any rate, I think, given the fact that in that case, there was nothing to do with disconnecting a public library district, DAC, or fire protection district, or anything of that nature, you had a landowner who was disputing an annexation. Again, I'm still in the Village of Glendale Heights case. Here, there's nothing that runs afoul of the legislative purpose of the statute of limitations provision of Section 7-1-46. Insofar as ROPAC goes, there again, as I touched on, that was a case where you had a quo morato action that was being filed. An action was being commenced by property owners. They initially, it seems like the thrust of that case dealt with a strip annexation, and almost as an afterthought, they said, oh, and by the way, this annexation 20 years ago that connects or bridges us up with the municipality was void. Therefore, we should be able to prevail. And the court, again, didn't find that persuasive. So, in light of the fact that I am out of time, I'll stand on my arguments as to the second question as outlined in our brief. Thank you very much. You also have additional time on rebuttal. Thank you. May it please the Court, Counsel. I think that in order to accept the defendant's arguments that the annexations here are, can be challenged at any time because they were void or ineffective, that renders Section 7-1-46 completely meaningless. Any challenge of an annexation ordinance is going to necessarily involve a claim as to the validity of the ordinance due to some alleged defect in the process. And if void or ineffective ordinances can be challenged after one year, then there is no factual situation in which 7-1-46 can apply. The defendant's argument ignores the plain language of the statute, which states that the limitation applies irrespective of whether the annexation may otherwise be defective or void. In the Glendale Heights case, which you've heard talked about a little bit, the court there was presented with an argument that an annexation was void ab initio and annullity, and therefore could be attacked at any time. The court specifically rejected that argument and said that the language irrespective of whether it may otherwise be defective or void really directly refutes that particular argument. What effect did the annexations have on those parcels in relation to this library question? Once the annexations were passed and 60 days from that date passed without the library district filing the court proceeding which is allowed by the Public Library Act, they were disconnected by operation of law. Meaning what for the future? What happened? What that means is those properties are no longer subject to the taxation levy by the Public Library District. Did they nonetheless continue to pay it? They did. And based upon that annexation, did they also pay whatever taxes would be due to the Village of Forsyth for the same service? To the Village of Forsyth, correct. So for a period of a decade or more, at least some of those parcels were there was double taxation for a service. For a library service. Correct. What about tomorrow? Next week, next year? Let's suppose you lose. What happens then? If we lose this case, then I suppose what we're saying is the annexations are invalid, therefore the disconnection never occurred. So the Public Library District still gets to assess its tax. But you could re-annex? In theory, could the Village re-annex? Yes, the Village could re-annex. Why just in theory? Well, it could re-annex. Understand, I'm not trying to set you up so you know what the effects are in the real world. One important point that is really more important to the Affirming Offenses is that the plaintiffs aren't asking for refunds of their taxes. They're just looking at the situation now and saying, okay, we're paying for two library services. We'd like this to be disconnected. They've made the request on the county clerk. The county clerk refused to do so, so now here we are. So, I want to be clear, none of the landowners are asking for their money back from the Library District? For prior years, that's correct. For prior years? That's correct. And that's one of your arguments why the latch is not applicable? That's correct. You know, Ken, so you say by operation of law the disconnect happens. Well, that's clearly not true. It wouldn't be here, right? I mean, it didn't happen. So, it wasn't by operation of law. And that gets back to what I was questioning the opposing counsel about. The county clerk has to do something. Even if the statute says it is by operation of law, it just ain't so. I agree, but I think the county clerk's role in this particular instance is purely ministerial. I understand that. What did he fail to do in 1992 that was ministerial? He essentially failed to, but he continued to extend the levy of taxes from the Public Library District. How would he have known not to do that? Simply based upon the passage of the ordinance? Based on the passage of the ordinance. So, let's just say for a moment that the notice is somehow defective. Let's start with that. He still knows about it. How does he still know about it? I'm trying to make sure I don't overstate the record, but ordinances are of course public record. In annexation ordinances they are to be recorded. But these weren't recorded, were they? Is that county that the recorder of deeds and county clerk are merged? They are separate. But what wasn't recorded was an affidavit of sending notice to the public libraries to be clear. But I think the other point is that, as we've talked about, the clerk, we've been extending taxes on these properties, the village of Forsyth's levy. So I think just based on that the county clerk at least had some constructive knowledge that the annexations occurred? Because that would show him double taxation. There would be no reason to levy the Forsyth tax unless... And as far as you know from 1992 to 2009 the county clerk, I assume it wasn't the same person, maybe it was, but that office didn't do anything about this. And when the controversy arose we're told the county clerk consulted with the state's attorney and the state's attorney said don't do anything. I'm sorry to have interrupted your argument, but I wanted to make sure I understood. I appreciate that, thank you. I think the ROPEC case is really instructed and as close as we have to the factual basis here because one of the ordinance in question was alleged to be ineffective due to lack of notice to the fire protection district trustees under section 7-1-1 of the municipal code. And the notice requirements for both public library district and fire protection district trustees are exactly the same. What the ROPEC court said was you have brought this challenge more than one year after the annexation ordinance was passed, therefore you can no longer challenge that ordinance. I think that's basically the same situation that we have here. Even if the allegations of the defendants in this case are true, as to notice, the time to challenge it has long since passed. One year from the date each was passed. Defendants have no real answer for that, I don't believe, other than to try to claim that our claims are based on affirmative defenses, not a commencement of an action. As counsel indicated, that was discussed in the second district case at Glendale Heights. While the court found that yes, you could read the phrase commencement of an action to exclude affirmative defenses, if you read section 7-1-46 as a whole, it indicates that its intent is to insulate finalized annexations from all legal attacks after one year, whether or not by commencement of an action. It's a very strong statute of limitation. It specifically applies irrespective of whether the annexation may otherwise be effective or void. It applies to direct or indirect challenges. And also, there's no period tolling the start of the limitation period until a claimant knew or should have known of his or her cause of action. And those findings, I don't believe, are limited to the facts of that particular case, but are findings of the legislative intent. Aren't you essentially arguing that this is not an affirmative defense? It's an action labeled an affirmative defense, but doesn't really meet the definition of it, because I guess it could be somewhat considered a counterclaim inasmuch as the request for relief is that the annexation is not effective. That's right. I would agree with that. The issue is that that's what the relief is, is that now we're setting aside annexation ordinances that have been passed more than one year. I don't think there's any way to break apart and say, well, this ordinance is effective as to this subject matter, but not effective as to this subject matter. It's either effective or it isn't. Are there reasons that this could not occur today, the annexation and the disconnect? Not to my knowledge. So it's possible. Would there be a right to it, or could it be contested? The annexation? I think once you open up and say we no longer have this annexation, you'd have to go back and re-annex it. So whatever the abilities there are for residents or others to contest would be open at that point. Well, in any event, someone must have made a decision that it was an easier route to come to this stockpile than it was to simply try to re-annex. Correct. Do you have an inkling as to what the reasons for that would be? Rather than to re-annex? Well, I think that the plaintiffs have a clear cause of right here. I'm not discounting that. I don't mean by that to disparage the effort that you're making or the plaintiff's rights. I don't mean I'm asking if the remedy is simply for it to become an effect, the remedy you're asking for, and that no refund is sought, what is the are we serving public policy by litigation? Or is there a significant tax loss that in future that the Barclay District would like to resist? Certainly a re-annexation is something I think the Barclay District would likely try to resist under the Public Library Act. That's certainly true. And that would be based on we've got a nice library, but we need that dough. They need to show either lack of contiguity or that the loss of the assessed value of the property that's being disconnected would impair their ability to render, I think the statute says, fully adequate library services to go through that procedure. Well, they would have liked to have done that years ago if they had gotten notice. Correct. But in terms of this route, we requested what we believe was a ministerial act on the part of the county clerk to perform, something that should have been performed many years ago. For whatever reasons it wasn't, okay, well now we point this out, let's fix it. And so that's sort of why we're going here. I also want to make clear on the purpose and the legislative intent behind 7-1-46. Because the opposing council has mentioned rightly so that there's a couple of cases, both Glendale Heights and Langendorfe City of Urbana Supreme Court cases that are saying, well, the intent is to shield zoning provisions. But what we have here in a reading of Langendorfe, that's a case where there's a challenge to zoning pursuant to annexation agreements. And what the plaintiff there was trying to claim is that he could challenge the annexation itself. The court disagreed with that. The court was reviewing provisions of the municipal code, not just 7-1-46, but also provisions that specifically deal with annexation agreements and zoning provisions that can be contained in the annexation agreement. So that's what the court is talking about, a statutory scheme being to protect zoning provisions. And that's the scheme it's talking about, not just 7-1-46, but also some other provisions of the code that we're not concerned with in this case. The Glendale Heights court did quote to that and hung on to that, but also looks at it and says, you know, 7-1-46, its intent seems to us to be to insulate, finalize annexations from all legal attacks after a year, and that there is a strong legislative preference for finality in annexation proceedings. So I don't believe that the purpose behind 7-1-46 is specific to protecting zoning. Rather, it's specific to protecting annexations after more than one year has passed. Zoning is not ever mentioned in 7-1-46 anywhere. I think to close up, the affirmative defenses, these affirmative defenses were adjudicated on the merits. The trial court decided this case on cross motions for summary judgment, and that's important because by filing cross motions, the parties effectively conceded the absence of any genuine issue of material fact and invited the court to decide the questions presented as a matter of law. The affirmative defenses were briefed, they were addressed by both parties at argument, and the defendant bore its burden of proof to those affirmative defenses. The trial court had all the facts in front of it, and I think ruled nevertheless that the plans are entitled to summary judgment. The trial court, I think we have to presume knows and applies the law correctly, and all reasonable presumptions should be resolved in favor of its action here. Would that answer another question, Saul? Well, counsel, would it be fair to summarize your article that the affirmative defense here should be considered by this court as an indirect commencement of an action? I think that it is because of the relief that is there, but it could be that the annexation was not effective. Yes, it is invalid, or void, or ineffective. And again, we have a case that under its facts... What's your case? That's the Glendale Heights case where it specifically applied, the 2nd District specifically applied this statute to affirmative defenses rights. Okay. Have you had a chance to look at the case of People, X-Rail, City of Des Plaines v. Village of Mount Prospect? I have not. That was a Quo Vorento case instead of an affirmative defense case. Would that make any difference? Because in that particular case, the court treated the answer as essentially a counterclaim. And that court decided that since the original action was brought within one year, even though the counterclaim was brought after one year, it should still stand. Does that have any impact on where we are here, or would you say that perhaps because it's a Quo Vorento case, it has no application? I think the reason that it has no application is because we are well past the one year here. These affirmative defenses are raised 20-some years. It's not in response to something that my clients brought within the statute. But the aspect of that case that said the answer was the equivalent of a counterclaim, I would think you would argue here the affirmative defense would be the equivalent of a counterclaim. And as much as in this affirmative defense, they're suggesting that the annexation was void ob initio. Yes, absolutely. Because of the relief sought, I would submit that it's an indirect attack. It's certainly an indirect attack. And I think based on the law, the affirmative defenses, we have a case that says this can apply to affirmative defenses. Commence an action shouldn't be led too literally because of when you look at the other language in the statute. Thank you. Mr. Hubbard? Mr. Flynn? May it please the Court? My name is Ed Flynn. I'm Eric Hubbard's partner. This is a case that's very simple to get caught up in the quagmire of minutia. But what we're really talking about here is full disclosure. Whether we're talking about the code of civil procedure or whether we're talking about the municipal code, we live in a world of full disclosure. And Forsyth passed these annexation ordinances. They did not tell the Barclay Library the date and time that the annexation ordinances were to be passed. And then in response to the question by this Court, they said, well, once the annexation ordinances were passed and 60 days passed after that, they automatically became effective. But the Library, by not having notice of when these annexation ordinances are going to be passed, is foreclosed from asserting its right during that 60-day window in circuit court. And Judge Turner, you asked about the relief under the disconnection provision of the Library Act, and my partner is correct. If we were able to go into circuit court and if we're able to prove a financial hardship, then the net effect would be that those residents would remain in this rural library district and would still be in the district. You asked about the question of double taxation, and I don't believe that that was – don't get me wrong. Scott Garwood's office is directly above my office. He's a good guy, but I don't think that he accurately represented to you what happened here. This library in Forsyth is under the library code, and this was argued in the circuit court, is a free library. They do not have the Forsyth tax assessment. And so the same tax – the library is funded out of their general fund, the same fund that funds their streets, lighting, things of that nature. So there is not a double taxation. There's not a general fund taxation plus a library taxation. And you were asked the question about the county clerk and how he did this – he didn't disconnect automatically without – and he did that without telling anybody. And with all due respect, that's exactly the problem or the place that the village – excuse me, that the Barkley Library is placed in. They're asked to lose this substantial portion of their library district without being given the chance to go back to circuit court. Well, let me flip that argument on you. What if the county clerk had disconnected, which the county clerk should have done, and then eight years later you come into court, aren't you going to be prohibited from contesting in spite of the lack of notice pursuant to Section 7-1-46? I think it's a perfectly good question, and I would like to answer it by saying that what I think this court is faced with under the municipal code is Section 7-1-1. And in Section 7-1-1, what you're looking at is the municipality is required to give notice to the library and the fire protection district. They're not talking about the residents. They're talking about only those two governmental entities. And so if we take the hypothetical that you just proposed to me, Justice Turner, and the library has a tax extension of $100,000, and the county clerk sends them their tax extension, and they receive $70,000, and they think, what's going on here? This isn't appropriate. And they contact the county clerk, and the county clerk says to them, well, this property was disconnected. And they say, well, we know nothing about it. I think then they're in a position, that library is in a position to file the same type of co-occurrent action to say that under Section 7-1-1, the disconnection was ineffective. Because when you read Section 7-1-1, it talks, as I said, only about the library and the fire protection districts. And it gets to the end and it says, if this is not done, meaning notice to the library and the fire protection districts, that the annexation is ineffective. With all due respect, I think one of the primary questions that the three of you must decide in your opinion in this matter is, it's ineffective to what? And my position or our argument is, it's ineffective as to the disconnection. It's not ineffective as to the annexation. And the logic of that is very simple. But this is a new argument just advanced today in Oral, isn't it? No, this is the same argument. This is exactly the same argument that when I stood before Judge Weber and Judge Weber asked me that question, are you saying that this annexation is ineffective? And I said, no, the annexation is effective. The disconnection is ineffective. And the logic behind that is simple. The residents that are in this village, we're not attacking this annexation and saying the annexation is invalid. They have received the street services that this village offers. They've received the police protection and the park services. But there's not been effective notice. So the argument is the annexation is ineffective as to the disconnection pursuant to Section 7-1-1. What I argued before Judge Weber, and with all due respect, it brought a smile to Judge Weber's face and the record will show this, and he asked Mr. Garwood the same question. I said, Judge, with all due respect, if you accept the position of foresight, then they can pass an annexation ordinance and they can take that annexation ordinance without giving the library notice or fire protection district notice and they can put it in the village clerks' drawer for 366 days. And then they can go down to the county clerk's office and they can record that annexation notice. And they have effectively annexed that entire territory without notice. That would appear to be the law, 7-1-46. The limitations set forth in this section shall apply to any annexation in a... I'm having a hard time saying that. Even where the judge, body, or officer annexing the territory did not at the time of such annexation have jurisdiction of the subject matter and irrespective of whether such annexation may otherwise be defective. You're asking us to completely ignore that language in the statute passed by the legislature. I don't believe I am. I believe that the cases that have been and it's the Glendale Heights case, that that provision is to address the annexation ordinances to prevent them from being attacked. And that's exactly what happened in the case in Champaign. It made perfect sense. The residents there, there was going to be a large shopping center built adjacent to their property. They all of a sudden found out about it. Boom, they want to run in and contest it. And they don't want that shopping center there. And it surely came through this court and ultimately to the Supreme Court because it's a Supreme Court case. And they said, no, a year has passed. You can't. And they were contesting it on the basis of the zoning because they didn't have a chance to fight the zoning of the shopping center adjacent to their residence. And so that's what foreclosed that's, in that case, the residents are foreclosed from arguing about that effectiveness of the zoning because of the one-year statute. But with all due respect, Justice Turner, if you were to embrace the position that the statute, the one-year statute of limitations is effective, then I think that what you're effectively doing is saying that Section 7-1-1 has no effect and the code should be amended and that should be deleted from the code because there shouldn't be given notice. Thank you. We'll take this matter under advisement. Thank you. We stand in recess until further call.